IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DINA ABDURAHMAN, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 20-3609 |
| | : | |
| PROSPECT CCMC, LLC d/b/a CROZER | : | |
| CHESTER MEDICAL CENTER *et al.*, | : | |
| *Defendants.* | : | |

**MEMORANDUM OPINION**

**Kenney, J.**　　　　　　　　　　　　　　　　　　　　　　　　　**November 24, 2020**

　　　　Plaintiff Dina Abdurahman ("Dr. Abdurahman") brings this action against her former employer Prospect CCMC, LLC d/b/a Crozer Chester Medical Center ("CCMC") and an attending physician, Dorian Jacobs ("Dr. Jacobs") (collectively "Defendants"), alleging gender and race discrimination, retaliation, and defamation. Plaintiff brings her claims under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), the Pennsylvania Human Relations Act ("PHRA"), and Pennsylvania law. Defendants filed a motion to compel compliance with an Arbitration Agreement that they argue mandates that this action be resolved through arbitration.[1] After consideration of the Arbitration Agreement, a Stipulated Statement of Facts and accompanying documents, and oral argument held on November 9, 2020, we conclude that neither CCMC nor Dr. Jacobs may compel Dr. Abdurahman to arbitrate this dispute. As a result, we will deny Defendants' Motion.

I.　　　　FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Technically, CCMC filed a motion to dismiss and compel compliance, which Dr. Jacobs joined, with the agreement to arbitrate; however, "a stay, rather than a dismissal, is the required course of action when compelling arbitration." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 227 n.2 (3d Cir. 2012).

CCMC hired Dr. Abdurahman as a graduate trainee for a medical residency in its Emergency Medicine department for a three-year appointment beginning on July 1, 2017. ECF No. 5 at ¶ 30. Dr. Abdurahman, a "Black female" whose "national origin is Ethiopian," alleges an attending physician and CCMC's Director of Toxicology, Dr. Dorian Jacobs, a white female, sexually harassed her during an evening at Dr. Jacob's home on September 18, 2018. *Id.* at ¶¶ 6, 45–84. Dr. Abdurahman alleges that Dr. Jacobs then falsely accused her of sexual assault in an internal complaint to CCMC and made knowingly false comments about Dr. Abdurahman to her colleagues. *Id.* at ¶¶ 85–88, 96–97. After Dr. Abdurahman asserted that Dr. Jacobs sexually harassed her instead of vice versa, Dr. Abdurahman alleges that Crozier Chester discriminated and retaliated against her by conducting an investigation motivated by discriminatory bias and ultimately terminating her employment. *Id.* at ¶¶ 179–181.

Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission on April 9, 2019. ECF No. 5 at ¶¶ 18–19. She received a right to sue letter from the EEOC on June 24, 2020. *Id*. Dr. Abdurahman filed a Complaint in the Delaware County Court of Common Pleas on June 25, 2020, which Defendants removed on July 23, 2020. After Plaintiff filed an Amended Complaint, CCMC moved to compel arbitration and dismiss the action. ECF No. 6. Dr. Jacobs filed a motion to join in CCMC's Motion, which we granted. *See* ECF No. 19.

Defendants argue that they may compel Dr. Abdurahman to arbitrate this dispute because she entered into an Arbitration Agreement with Prospect Health Access Network, Inc ("Prospect Health"), CCMC's sister entity. ECF No. 6 at 4. The Arbitration Agreement provides, among other things, that Dr. Abdurahman "hereby agree[s] with my employer, Prospect Health Access Network, Inc. … that any and all claims, disputes, and/or controversies that we may have against

the other, including claims, disputes and/or controversies I may have against the Company's parent, subsidiaries, directors, officers, employees or agents…shall be submitted to…binding arbitration." ECF No. 13-1 at 2.

Dr. Abdurahman signed the Arbitration Agreement and several other pieces of new-hire paperwork on May 10, 2017. ECF No. 13 at ¶ 6. The new-hire paperwork included the "Safe Medication Administration Policy," the "At-Will Employment" acknowledgment, the "Employee Confidentiality and Proprietary Information Agreement," and the "Email/Internet Acknowledgment Form." ECF No. 13-1 at 4–16. On June 12, 2017, Dr. Abdurahman signed the "Graduate Medical Education Appointment Agreement for Graduate Trainees In Emergency Medicine Agreement" ("Residency Agreement"). *Id.* at 18–31. The Residency Agreement is the only agreement between Dr. Abdurahman and CCMC. *See id.*

Plaintiff filed a "Cross Motion for Summary Judgment" (ECF No. 9), which we denied because CCMC did not file a Motion for Summary Judgment. ECF No. 10.  Our Order denying Dr. Abdurahman's Cross Motion explained that we would consider her "Cross Motion" and accompanying brief in opposition to Defendant's Motion to Dismiss and in support of her Cross Motion (ECF No. 9-1), as a request to apply the summary judgment standard and as a response to Defendant's Motion to Dismiss. *Id.* We directed the parties to meet and confer to establish a schedule to conduct limited discovery on the arbitration issue. *Id.*

After conferring, the parties opted to submit a joint statement of stipulated facts limited to the arbitration issue rather than to conduct limited discovery. ECF No. 13. The parties appended the Arbitration Agreement, the "Safe Medication Administration Policy," the acknowledgment of "At-Will Employment," the "Employee Confidentiality and Proprietary Information Agreement," and the "Email/Internet Acknowledgment Form" to their Joint Statement of Stipulated Facts. ECF

No. 13-1. By stipulating to the facts, the parties acknowledged that the record on the arbitration issue was complete, permitting us to decide the issue as a matter of law.

II.  STANDARD OF REVIEW

We are to assess motions to compel arbitration under either the Federal Rule of Civil Procedure 12(b)(6) standard for motions to dismiss or the Rule 56 standard for summary judgment. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013). The complaint is the primary guidepost in determining which standard to apply. *See Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576 (3d Cir. 2017).

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id*. (quoting *Guidotti*, 716 F.3d at 776). If, however, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue" then courts should consider the motion to compel arbitration under a Rule 56 standard. *Guidotti*, 716 F.3d at 776 (quoting *Somerset,* 832 F. Supp. 2d at 482). Should a court apply the Rule 56 standard, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id*.

We permitted the parties to conduct limited discovery before we entertained further briefing, but the parties chose to instead submit a Joint Statement of Stipulated Facts.[2] *See* ECF

---

[2] We note that Plaintiff's Amended Complaint makes no mention of any arbitration agreement. ECF No. 5. After Defendant CCMC attached an Arbitration Agreement to its Motion to Dismiss, ECF No. 6-2 at 41–42, Dr. Abdurahman referenced additional facts beyond those set out in the Amended Complaint and Arbitration Agreement sufficient to render the Rule 12 standard inapplicable under *Guidotti*. *See* ECF No. 9.

No. 13. At this point, the Rule 12(b)(6) standard is no longer appropriate, and we apply the Rule 56 standard to Defendant's Motion. *See Guidotti*, 716 F.3d at 775.

Under Rule 56(a), Defendants' "motion should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Maddy v. Gen. Elec. Co.*, 629 F. App'x 437, 440 (3d Cir. 2015) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id*. When one party seeks to force another to arbitrate, we are to give the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise." *Par-Knit Mills, Inc. v. Storckbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir.1980) "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id*.

III.   DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "embodies the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, (2006)). The FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement. *Id* (citing 9 U.S.C. §§ 3, 4). Before we may compel a party to arbitrate under the FAA, "we must consider two 'gateway' questions, one of which is 'whether the parties have a valid arbitration agreement.'" *Id* (internal quotations omitted). "One component of a valid arbitration agreement is that the parties agreed to arbitrate," which courts determine by applying state-law principles of contract formation.

*Id.* at 599–600. All parties agree that Pennsylvania law applies. If a valid agreement to arbitrate exists, we must then consider whether the dispute is governed by the arbitration agreement as a matter of federal law. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 524 (3d Cir. 2009).

Dr. Abdurahman disputes the existence of an agreement to arbitrate between her and CCMC. She argues she did not agree to arbitrate this dispute, because CCMC was not a signatory to her Arbitration Agreement with Prospect Health. Dr. Abdurahman's argument challenges the existence of an arbitration agreement, and so we may decide whether a valid agreement exists. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.") (citation omitted); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 112 (3d Cir. 2000) ("[W]hen the very existence of such an agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists.").

No party contests that Dr. Abdurahman's Arbitration Agreement with Prospect Health is a valid agreement to arbitrate. The issues to be resolved then are whether CCMC can compel Dr. Abdurahman to arbitrate her claims under the Arbitration Agreement, even though it did not sign that Agreement, and whether Dr. Jacobs can enforce her former employer's Arbitration Agreement against Dr. Abdurahman. We find that neither Defendant can compel Plaintiff to arbitrate her claims.

### A. Dr. Abdurahman's Claims Against CCMC

CCMC admits that it is not a signatory to the Arbitration Agreement, but offers several reasons as to why it may compel arbitration as a non-signatory. First, CCMC argues that because

6

the Arbitration Agreement contains broad language, the presumption of arbitrability should apply to all claims arising in connection with Dr. Abdurahman's employment, including claims she asserts against non-signatories. ECF No. 6-1 at 11–12. However, the presumption favoring arbitration does not apply to claims by or against non-signatories. *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 332 (E.D. Pa. 2004); *see also Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 626 (E.D. Pa. 2018).

      CCMC offers two other theories supporting its right to compel Dr. Abdurahman to arbitrate this dispute. It argues that she is estopped from avoiding arbitration, and that agency principles bind non-signatories to arbitration agreements. A non-signatory to an arbitration agreement may bind a signatory only when "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Torres v. CleanNet U.S.A., Inc.*, 90 F.Supp.3d 369, 379 (E.D. Pa. 2015) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). "In the wake of *Arthur Andersen*…we must expressly consider whether the relevant state contract law recognizes the particular principle as a ground for enforcing contracts [by or] against third parties." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir.2014). Our Court of Appeals has applied agency logic to bind non-signatories to arbitration agreements. *Pritzker v. Merrill Lynch*, *Pierce, Fenner & Smith*, 7 F.3d 1110, 1122 (3rd Cir.1993) (binding a non-signatory business entity to the arbitration agreement of its "corporate sister"). CCMC invokes only equitable estoppel, which Pennsylvania law recognizes, and agency logic under *Pritzker*, 7 F.3d at 1122.

*1. Agency Theory*

We consider first CCMC's agency theory. CCMC relies on *Pritzker* for the proposition that "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." ECF No. 14 at 3 (quoting *Pritzker*, 7 F.3d at 1121).

In *Pritzker*, plaintiff trustees of a pension plan sued a signatory brokerage firm, the firm's employee, and a related entity acting as a custodian of funds invested with the brokerage firm. *Id.* at 1112. At issue was whether plaintiffs' claims against the non-signatories, the firm employee and custodian of funds, were within the scope of the arbitration agreement signed only by the brokerage firm. *Id.* at 1113. The Court found plaintiffs' claims against both fell within the scope of the arbitration agreement. *Id.* Plaintiffs' claims against the employee were within the scope of the agreement because she acted as an agent of the party who signed the agreement. *Id.* at 1121. Claims against the custodian were likewise within the scope of the agreement because the signatory brokerage firm and non-signatory custodian were subsidiaries of the same parent and because the custodian was "obligated to perform certain services" in connection with the agreement between the plaintiffs and the brokerage firm. *Id.* at 1122. The Court also noted that the asset manager could have been an alter-ego of the brokerage firm. *Id.*

Here, CCMC's interests are not "directly related to, if not congruent with" signatory Prospect Health's interests. *See id.* Prospect Health employs a network of health care providers within a healthcare system that provides healthcare to patients in and around Delaware County, Pennsylvania. ECF No. 13 at ¶¶ 9,11. CCMC is a "legal entity that operates an acute care hospital with a comprehensive emergency department." *Id.* at ¶ 1. As in *Pritzker*, the corporate entities

8

here, CCMC and Prospect Health, share a corporate parent, Prospect Crozer, LLC.[3] *Id.* at ¶ 11. The similarities end there, though Defendants argue that the relationship between the two entities "goes beyond mere corporate technicalities." ECF No. 14 at 4. We disagree because CCMC has not identified any facts suggesting that CCMC is anything but an independent entity that controls its own rights and obligations.

The Court of Appeals based its ruling in *Pritzker* in part on the fact that the non-signatory subsidiary was compelled to perform certain services in connection with the agreement containing the arbitration clause. *Pritzker*, 7 F.3d at 1122. Here, the Arbitration Agreement is a standalone agreement that does not refer to CCMC, much less obligate it to perform any services. The only comprehensive employment agreement Plaintiff signed with CCMC—the Residency Agreement—contained no arbitration clause, or any reference to the Arbitration Agreement with non-party Prospect Health.

Two other distinctions from *Pritzker* follow. First, the claims plaintiff brought against the non-signatory in *Pritzker* arose out of services the non-signatory was compelled to perform in connection with the agreement containing the arbitration clause. CCMC has not identified any agreements it has with Prospect Health obligating the legal entities to one another, or any other agreement suggesting a unity of interests. Second, we note that Dr. Abdurahman did not sue the signatory Prospect Health *in addition to* the non-signatory CCMC because she has no basis to sue Prospect Health. *Cf Pritzker*, 7 F.3d 1110 (asserting claims against signatory and non-signatory for related conduct). In broad strokes, Dr. Abdurahman alleges that her employer, CCMC, failed to ensure a safe place of employment and educational program for her as its employee and student. Under Title VII and Title IX, Dr. Abdurahman could only assert these claims against her employer

---

[3] The fact that two entities share the same corporate parent alone falls short of demonstrating that a non-signatory's interests are "directly related to, if not predicated upon, [the signatory's] conduct" under *Pritzker*, 7 F.3d 1110.

and educational institution. *See Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 559 (3d Cir. 2017) (confirming that a private retaliation claim exists for employees of federally-funded education programs under Title IX notwithstanding Title VII's concurrent applicability).

Construing the contracts against their sophisticated drafters, the legal entities here relied on "corporate technicalities" to attenuate the relationship between them. The contracts Dr. Abdurahman signed were drafted to include one entity as the signatory on one agreement, and another entity as signatory on another agreement. In the Arbitration Agreement and in some of the other documents Dr. Abdurahman signed on the same day, Prospect Health purports to be Dr. Abdurahman's employer. *See* ECF No. 9-1 at 2–3 (providing that Dr. Abdurahman would submit to arbitration all claims "arising out of or relating to" her employment with the "Company," defined as "Prospect Health"). However, several other agreements she signed that day, including an acknowledgement of at-will employment, reference her employment with the "Crozer-Keystone Health System." *Id.* at 5.

The contract providing the most relevant terms of her employment—her duties, compensation, benefits, suspension and termination rights, etc.—is the Residency Agreement, which was signed by Dr. Abdurahman, CCMC's Chief Executive Officer, its Chief Financial Officer, the director of CCMC's emergency medicine residency program, and CCMC's legal counsel. *Id.* at 18–24. Had CCMC intended to arbitrate its disputes with its residents, including Dr. Abdurahman, it could have embedded an arbitration clause in the contract governing her residency, the Residency Agreement. Under these circumstances, we find agency principles do not apply in this case to permit CCMC to bind Dr. Abdurahman to the terms of her Arbitration Agreement with Prospect Health.

*2. Equitable Estoppel*

CCMC also argues that it may compel Dr. Abdurahman to arbitrate this dispute under an equitable estoppel theory. So-called "alternative estoppel" allows a non-signatory to bind a signatory where the non-signatory establishes: (1) a close relationship between the entities involved; and (2) the claims against it are intimately founded in and intertwined with the underlying contractual obligations. *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001). To meet the second part of the test, CCMC must show that the claims against it are "intimately founded in and intertwined with" the underlying obligations of the contract to which they were not a party. *Id.*

Based on our discussion of CCMC's agency theory *supra*, we find that CCMC cannot show a close relationship between the entities involved under an alternative estoppel theory. Even if CCMC could show a close relationship, we find that alternative estoppel is inappropriate because Dr. Abdurahman's claims against CCMC are not "intimately founded in" or "intertwined with" the Arbitration Agreement. The essential question is whether Dr. Abdurahman would have an independent right to recover against the non-signatory CCMC even if the Arbitration Agreement were void. *Miron*, 342 F. Supp. at 333 (citations omitted); *see also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir.2002) (*rev'd* on other grounds, *PacifiCare Health Sys. v. Book*, 538 U.S. 401(2003)) ("The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.").

Here, Plaintiff's claims against CCMC (specifically, claims of civil rights violations and defamation) are independent of the Arbitration Agreement, which, as we have indicated, is a

11

standalone agreement, and not a clause in an employment agreement or even referenced in any other agreement. Nowhere in her Amended Complaint are the allegations against the CCMC tied to any obligations CCMC had or any benefits they may have received under the terms of the Arbitration Agreement, which makes no mention of CCMC. If we were to find the Arbitration Agreement void, invalid, or unenforceable, Dr. Abdurahman would still have valid causes of action against CCMC grounded in common law and statutory remedies. Dr. Abdurahman's claims against CCMC do not depend on and are not intertwined with the Arbitration Agreement, and CCMC therefore cannot enforce Arbitration Agreement against her under a theory of alternative estoppel. We find that there is no enforceable arbitration agreement between Dr. Abdurahman and CCMC as a matter of law, and its motion to compel must, therefore, be denied.

### B. Dr. Abdurahman's Defamation Claim Against Dr. Jacobs

The parties agree that Dr. Jacobs was Prospect Health's employee at all relevant times. ECF No. 13-1 at ¶ 19.[4] Because a principal is bound under the terms of a valid arbitration agreement, its agents, employees, and representatives are also covered under the terms of such agreements. *Pritzker*, 7 F.3d at 1121. Under traditional agency theory, she is subject to contractual provisions to which Prospect Health is bound. *Id*. At issue then, is whether Dr. Abdurahman's defamation claim against Dr. Jacobs falls within the scope of her valid Arbitration Agreement with Dr. Jacobs' former employer.

The issue of scope is subject to federal law as set out in the FAA. *See Mitsubishi Motors Corp. v. Soler Chrysler*, 473 U.S. 614 (1985). When addressing issues of scope under the FAA, we must do so "with a healthy regard for the federal policy favoring arbitration." *Id*. Should we find "any doubts concerning the scope of arbitrable issues," such doubts "should be resolved in

---

[4] During oral argument, Plaintiff explained that she believed Dr. Jacobs was employed by CCMC at the time of pleading.

12

favor of arbitration." *Id*. (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25(1983)). However, "[r]egardless of whether the arbitration clause is broad or narrow…arbitration is still a creature of contract and a court cannot call for arbitration of matters outside of the scope of the arbitration clause." *United Steelworkers of Am., AFL-CIO-CLC v. Rohm and Haas Co.*, 522 F.3d 324, 332 (3d Cir. 2008).

"The proper starting point" in assessing the scope of an arbitration agreement is the agreement's plain meaning. *Steigerwalt v. Terminix Int'l Co., LP*, 246 F. App'x 798, 801 (3d Cir. 2007). We will therefore look to the plain meaning of the Agreement "while taking care to respect 'liberal federal policy favoring arbitration agreements.'" *Sorathia v. Fidato Partners, LLC*, 2020 WL 5121473, at *6 (E.D. Pa. Aug. 31, 2020) (quoting *Moses*, 460 U.S. at 24).

Dr. Abdurahman and Prospect Health agreed to arbitrate disputes, including those against Prospect Health's employees, "arising out of or relating to this [Agreement], my employment with the Company, or the termination of my employment." ECF No. 13-1 at 2. The Agreement includes within its scope "all disputes, whether based on tort, contract, statute…" The Arbitration Agreement refers to Plaintiff's at-will employment, and provides in all-caps that this Agreement encompasses "all employment-related claims." *Id.* at 3. Dr. Abdurahman argues that her defamation claim is based on statements Dr. Jacobs made to other hospital employees about Dr. Abdurahman that were separate and apart from Dr. Abdurahman's reports to CCMC and unconnected to CCMC's investigation of her report and therefore cannot be said to relate to her employment or termination. ECF No. 16 at 13–14.

We note the expansive language of the Arbitration Agreement, its specific reference to disputes based on tort, and our obligation to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, but nonetheless agree with Plaintiff that her defamation claim against

13

Dr. Jacobs falls outside of the Arbitration Agreement's scope. Her defamation claim is based on statements that Dr. Jacobs allegedly made to other employees that Dr. Abdurahman was having sex in an on-call room and that Dr. Abdurahman sexually assaulted Dr. Jacobs and her husband. ECF No. 5 at ¶¶ 87–88, 102, 104. This claim does not "aris[e] out of or relat[e] to this [Agreement]."

The provision "arising out of or relating to this [Agreement]" suggests that the parties intended to arbitrate only those disputes involving an Arbitration Agreement term, or some other element of Arbitration Agreement itself. Her defamation claim also does not "arise[e] out of [her] employment with [Prospect Health]" because as we have discussed, Dr. Abdurahman is not employed by Prospect Health. Finally, her defamation claim does not "aris[e] out of the termination of [her] employment" because the allegedly defamatory statements were not connected to CCMC's investigation of Dr. Abdurahman and her ultimate termination. Because we find that Plaintiff's defamation claim against Dr. Jacobs falls outside of the Arbitration Agreement's scope, we will deny Dr. Jacobs' motion to compel arbitration.

IV. CONCLUSION

For the foregoing reasons, we will deny Defendants' motions to compel arbitration. An appropriate order follows.