IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |
|---|---|
| DINA ABDURAHMAN, <br><br> Plaintiff, <br><br> v. <br><br> PROSPECT CCMC, LLC d/b/a <br> CROZER CHESTER MEDICAL <br> CENTER AND DORIAN JACOBS, M.D. <br><br> Defendants. | Case No. 2:20-cv-03609-CFK <br><br> JURY TRIAL DEMANDED |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PROSPECT
CCMC, LLC d/b/a CROZER CHESTER MEDICAL CENTER'S AND DORIAN
JACOBS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO
DR. JACOBS' PAST CONDUCT AND CESSATION OF SERVICES FOR CROZER

I.   INTRODUCTION AND RELEVANT FACTS

   A.   Facts Relating to Defendant Jacobs' Conduct At Work And Plaintiff's Efforts To Bring It To The Attention of Defendant Crozer's Investigator

During Lisa Scidurlo's interview of her on November 13, 2018, Plaintiff had a stack of papers with her that she believed were relevant to the investigation into the events of September 18, 2018, and she offered them to Ms. Scidurlo. Exhibit A, Plaintiff's Answers to Defendant Crozer's First Set of Interrogatories, Exhibit A at 19-24. Other than a medical journal article about sexual harassment in academic medicine, Ms. Scidurlo did not accept the documents Plaintiff offered to her. Id. Plaintiff has marked the entire set of the documents she offered to Ms. Scidurlo on November 13, 2018, as a trial exhibit. Exhibit B, Exhibit P-51. By way of example, the documents Ms. Scidurlo refused to accept included the following: (1) an email from Defendant Jacobs to her coworkers with a cartoon that stated: "Finally a bathroom for me and

my huge penis"; (2) a series of social media posts by Defendant Jacobs and others at Crozer, including the Program Director, Mark Saks, in which Defendant Jacobs expressed disappointment that she did not have residency applicants who described their guilty pleasures as masturbating; (3) a handwritten note created by Defendant Jacobs that appeared at the hospital that said: "Every time you think about getting a tox consult, just do it! Tox consults give me boners. – D"; (4) screenshots of text messages Defendant Jacobs exchanged with Plaintiff and other residents whom she had invited to her home in which she said: "Pam says Chris loves white wine and that we can play slap the sack (?) with a bota box. Which apparently does NOT involve scrote-taps" and "You can thank Pam for that accessory education, Chris. Otherwise you were gonna get some ball taps and I was gonna have to go to HR." Id. at pages 8, 32, 80, and 103 of 105 of the PDF.

      Plaintiff also marked Defendant Jacobs' handwritten note about tox consults giving her "boners" as a separate trial exhibit. Exhibit C, Exhibit P-52. Defendant Jacobs admits that the note was posted at the hospital and visible to residents. Exhibit D, D. Jacobs Depo at 10:16-24; 11:1-22. Similarly, Defendant Crozer's head of Human Resources, Liz Bilotta, confirmed that she was aware that Defendant Jacobs posted the note at work, that doing it violated Crozer's policy on sexual harassment, and that Crozer did not discipline Defendant Jacobs for her violation of policy. Exhibit E, Bilotta Dep at 162:07-163:17; 165:10-166:24.

      B.      <u>Facts Relating To Defendant Jacobs' Cessation Of Services At Crozer</u>

      As Defendants set forth in their Motion, Defendant Crozer made the decision that she would no longer perform services at Crozer Keystone Health Network in December 2019, about a year after it fired Plaintiff. ECF No. 167-1 at 3. At that time, during an investigation into an incident in the Emergency Department, Defendant Crozer's investigator concluded that

Defendant Jacobs had engaged in misconduct for mishandling a substance found on a patient. Id. The Employee Safety Investigation Report ("Report") prepared by Defendant Crozer in connection with the incident shows that the investigators, an Occupational Safety Specialist and a Human Resources Business Partner, included: Background Information; a Summary of Investigative Findings & Notes; Conclusion of Investigation Findings, including explanations of credibility determinations; and Recommendations of Corrective Actions. Exhibit F, Exhibit P-007. The investigators included detailed summaries of their witness interviews as attachments to the Report. Id. In the Conclusions section, the investigators found that the "event accounts detailed" by several of those present during the incident, including Defendant Jacobs, were "inconsistent and not credible." Id. at 3 of 19. That section also includes an explanation for Defendant Crozer's conclusion with respect to how the individuals accused of misconduct compared to the other witness interviews and specific evidence.

II.   ARGUMENT

    A.   The Documents Plaintiff Attempted To Give To Defendant Crozer's Investigator And Defendant Jacobs' Note About Tox Consults Are Relevant And Admissible In This Case.

Defendants argue that the evidence in Exhibits P-51 and P-52 must be excluded as character evidence pursuant to Rule 404. To the contrary, the documents contained in these Exhibits are directly relevant to Plaintiff's discriminatory termination claim. First, the documents contained in Exhibit P-51 that Plaintiff attempted to give to Ms. Scidurlo are relevant to her claim for discriminatory termination expressly because she refused to accept them. In support of her claim that Defendant Crozer's investigation and related conclusion that she sexually assaulted Defendant Jacobs was just a pretext for discrimination, Plaintiff will make the argument, among others, that Lisa Scidurlo's investigation itself was tainted by discriminatory

3

bias. See ECF No. 139 at 16-19. However, in order to establish that Defendant Crozer should be liable for Ms. Scidurlo's discriminatory bias, Plaintiff will have to show that Ms. Scidurlo's discriminatory actions in conducting a biased investigation "proximately" caused the termination. See, e.g., Crosbie v. Highmark, Inc., 47 F.4th 140 (3d Cir. 2022); Williams v. Sch. Dist. Of Phila., Civ. A. No. 23-2060 (3d Cir. Mar. 13, 2024). Thus, Plaintiff must be permitted to introduce the evidence of Defendant Jacobs' behavior that she gathered, and which the decision makers never saw due to Ms. Scidurlo's arguably biased investigation, to explore whether that information would have influenced their credibility assessments and, ultimately, the termination decision.

Similarly, evidence that Ms. Bilotta was aware that Defendant Jacobs, who is White, violated Defendant Crozer's sexual harassment policies by posting the note about "tox consults," yet was not disciplined, is directly relevant to Plaintiff's claim for discriminatory termination. As Defendants conceded in another of their Motions *in Limine*, a plaintiff can establish pretext by showing that the defendant treated similarly situated people outside of the plaintiff's protected class more favorably. ECF No. 161-1 at 3 (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). Here, Plaintiff must be permitted to introduce this evidence that Defendant Crozer had knowledge that a White woman's violation of its sexual harassment policy and failed to address it at all in support of her discriminatory termination claim. Therefore, Plaintiff does not seek to introduce this evidence as "character evidence" prohibited by Rule 404, and Defendants' Motion to exclude Exhibits P-51 and P-52 must be denied.

      B.      The Investigation Report That Was The Basis For Defendant Jacobs' Cessation Of Services With Defendant Crozer Is Relevant And Admissible.

As noted above, when Defendant Crozer received a complaint about the misconduct for which it ultimately ended its relationship with Defendant Jacobs, the Human Resources and

Safety representatives who investigated the issue prepared a report that included detailed list of steps in the investigation, witness statements, and explanations of their credibility determinations. Exhibit F, Exhibit P-007. In contrast, when she conducted her investigation into Defendant Jacobs' accusations that Plaintiff sexually assaulted her, Lisa Scidurlo's report did not contain witness statements or an explanation for why she made her ultimate credibility assessment (other than she personally believed that Plaintiff's text messages were a sign of "guilt"), and she never actually investigated Plaintiff's own accusations of sexual harassment. ECF No. 122-6; ECF No. 139-2, Section F.

With respect to this Exhibit, Plaintiff intends to argue that the disparity with which Defendant Crozer handled its investigation into these doctors' mishandling of a substance in the Emergency Room is evidence of its disparate treatment in the thoroughness of an investigation based on the race and national origin of the accused. As discussed in response to Defendant Crozer's Motion to exclude evidence of other sexual harassment investigations, a significant deviation from an employer's own practices and procedures in responding to accusations of misconduct is evidence of pretext. As the Court of Appeals for the Third Circuit confirmed in its leading pretext case, pretext may be shown with evidence that conduct that is "foolish, imprudent, or incompetent *by comparison to the employer's usual mode of operation.*" Fuentes v. Perskie, 32 F.3d 759, 765 n.8 (emphasis added).

As of the time of the investigation described in Exhibit P-007, Ms. Bilotta was still head of Human Resources and ultimately responsible for the HR staff member who handled it. Exhibit E, Bilotta Depo at 10:04-08. Not only does the disparity in Defendant Crozer's handling of the investigation of misconduct accusations against Defendant Jacobs help Plaintiff prove disparate treatment based on race and national origin, but it is also relevant to her claim that Defendant

Crozer was recklessly indifferent to Plaintiff's right to work in a harassment-free work environment. A reasonably juror who has a chance to compare Defendant Crozer's "mode of operation" when presented with a workplace safety issue other than sexual harassment with its "mode of operation" when that safety risk is discriminatory harassment could conclude that the Hospital just did not care as much about its legal obligations to protect employees from harassment in the workplace.

      C.      This Court Must Reject Defendants' Argument That They Will Be Unduly Prejudiced By Plaintiff's Introduction Of Exhibits P-007, P-51, or P-52.

As this Court made clear in an earlier ruling in this case, "detrimental" evidence is not necessarily prejudicial for purposes of Rule 403. ECF No. 169 at 1 n.1 (citing United States v. Christie, 624 F.3d 558, 570 (3d Cir. 2010) ("Unfair prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed unfairly prejudicial."). Here, Exhibits P-51 and P-52 include evidence that is directly relevant to Plaintiff's claims. The fact that such evidence helps Plaintiff by pointing out that Defendant Jacobs engaged in conduct that violated Defendant Crozer's sexual harassment policies does not mean it is "unduly prejudicial" to Defendant Jacobs. The same is true for the disparate way in which Defendant Crozer handled its investigation into an accusation that Defendant Jacobs, who is White, engaged in misconduct, as compared to the way in which it handled Defendant Jacobs' accusations of misconduct against Plaintiff, who is Black and Ethiopian.

Finally, if they believe the jury may somehow misuse this important and highly probative evidence as mere "character evidence," then Defendants are free to request a limiting instruction from the Court. See Fed. R. Evid. 105.

III.     CONCLUSION

    For the reasons set forth herein, Plaintiff respectfully requests that this Court deny Defendant Prospect CCMC, LLC d/b/a Crozer Chester Medical Center's and Dorian Jacobs' Motion *In Limine* To Exclude Evidence Related to Dr, Jacobs' Past Conduct and Cessation of Services For Crozer in its entirety.

                            Respectfully submitted,

                            UEBLER LAW LLC

                            */s/Julie A. Uebler*
                            Julie A. Uebler, Esquire
                            Attorney ID No. 71297
                            Joyce L. Collier, Esquire
                            Attorney ID No. 54324
                            101 Lindenwood Drive, Suite 225
                            Malvern, Pennsylvania 19355
                            (484) 875-3186
                            uebler@ueblerlaw.com
                            collier@ueblerlaw.com

                            *Attorneys for Plaintiff*
                            *Dina Abdurahman*

CERTIFICATE OF SERVICE

I, Julie A. Uebler, hereby certify that true and correct copies of Plaintiff's Response in Opposition to Defendant Prospect CCMC, LLC d/b/a Crozer Chester Medical Center's and Dorian Jacobs' Motion *In Limine* To Exclude Evidence Related to Dr, Jacobs' Past Conduct and Cessation of Services For Crozer, proposed Order, and Exhibits were filed with the Court on June 4, 2024, and are available for viewing and downloading from the ECF system by the following counsel of record:

Andrew S. Gallinaro, Esquire
FISHER & PHILLIPS, LLP
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103

*Attorneys for Defendant
Dorian Jacobs, M.D.*


Paul C. Lantis, Esquire
Kimberly D. Saginario, Esquire
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

*Attorneys for Defendant
Prospect CCMC, LLC d/b/a Crozer Chester Medical Center*

　　　　　　　　　　　　　　　　　　　　　　/s/Julie A. Uebler
　　　　　　　　　　　　　　　　　　　　　　Julie A. Uebler, Esquire