## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DINA ABDURAHMAN,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 20-3609** |
| | : | |
| **PROSPECT CCMC, LLC d/b/a** | : | |
| **CROZER CHESTER MEDICAL** | : | |
| **CENTER, *et al.*,** | : | |
| *Defendants.* | : | |

### MEMORANDUM

**KENNEY, J.**                                                                                  **JUNE 6, 2024**

Presently before the Court is Defendant Prospect CCMC, LLC, d/b/a Crozer Chester Medical Center's ("Crozer") Motion for Summary Judgment (ECF No. 135), which has been fully briefed (*see* ECF Nos. 139, 142, 143). For the reasons detailed below, the Court will grant in part and deny in part Crozer's Motion. In providing the below reasoning, the Court writes primarily for the attorneys and parties, all of whom are well familiar with the factual and procedural background of this case. An appropriate Order will follow.

## I.  DISCUSSION

### A.  Hostile Work Environment Claims (PHRA and Title VII)

#### 1.  The PHRA

Plaintiff's hostile work environment claim under the Pennsylvania Human Relations Act ("PHRA") is time-barred. Because Plaintiff filed her complaint with the Pennsylvania Human Relations Commission ("PHRC") on April 9, 2019, ECF No. 134 ¶ 15, any incidents of sexual harassment occurring prior to October 11, 2018 are barred, *see Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (explaining that to bring suit under the PHRA, a plaintiff must have first filed an administrative complaint with the PHRC within 180 days of the alleged

discriminatory act) (citations omitted); 43 P.S. § 959(h).  Here, all of Plaintiff's alleged incidents are dated prior to October 11, 2018.  *See* ECF No. 134 ¶¶ 31-101.

While Plaintiff argues that her claim is still timely under the "continuing violation" doctrine, that doctrine is inapplicable.  ECF No. 139 at 10-12.  Under the "continuing violation" doctrine, a plaintiff may preserve incidents of sexual harassment that occurred outside of the limitations period as part of her claim, but only if "the last act evidencing the continuing practice falls within the limitations period."  *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal citation omitted).  Here, Plaintiff argues that because she reported the sexual harassment to Crozer after October 11, 2018 and Crozer failed to take "prompt and adequate remedial action" thereafter, her claim is still timely.  *See* ECF No. 139 at 10-12.  In other words, Plaintiff argues that it is Crozer's failure to take remedial action that is the "continuing violation"—and because that violation did not begin until Plaintiff reported her allegations to Crozer in late October and November 2018, Plaintiff's claim only accrued thereafter.  *See id.* at 12.

The Court has been unable to find any precedent to support Plaintiff's argument that a "continuing violation" can exist where the "act" that falls within the limitations period is the defendant's failure to take action, and the Court declines to create that precedent here.  Doing so would effectively eliminate the PHRA's statute of limitations, as it would allow plaintiffs to revive otherwise time-barred claims by reporting them whenever they so choose—months or even years after the limitations period has expired—and then bringing suit if the defendant fails to investigate them.  The "continuing violation" doctrine "should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims," *Cowell*, 263 F.3d at 295; to allow Plaintiff to revive her otherwise barred claims under this doctrine would do just that.

Moreover, the only two cases Plaintiff cites are readily distinguishable. *Crighton v. Schuylkill County* is inapposite given that (1) it was decided at the motion to dismiss stage, not summary judgment, and (2) Plaintiff had alleged a number of "harassing incidents," some of which occurred within the limitations period. 882 F. Supp. 411, 415 (E.D. Pa. 1995). And in *Randler v. Kountry Kraft Kitchens*, the Court found there to be a "continuing violation" because the record was "replete" with repeated incidents of sexual harassment, including at least two within the limitations period. 2012 WL 6561510, at \*2–3, \*8 (M.D. Pa. Dec. 17, 2012). No such similar facts exist here.

### 2.    Title VII

Although Defendant argues that there is no genuine dispute of material fact as to whether Plaintiff suffered "severe or pervasive" sexual harassment, the Court cannot conclude the same on this record. *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (explaining that a court must consider "all the circumstances" in determining whether the conduct at issue is sufficiently severe or pervasive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (citation omitted)). Here, there is evidence that on September 18, 2018, Dr. Jacobs touched Dr. Abdurahman in multiple places, including on her leg, ECF No. 139-9 at 24, 25; kissed Dr. Abdurahman, *id.* at 25, ECF No. 139-11 at 21; and told Dr. Abdurahman about her preference for "girl on girl" porn, ECF No. 139-9 at 24. There is also evidence that on a separate occasion, Dr. Jacobs commented on Dr. Abdurahman's breasts and said she was "hot." ECF No. 139-7 ¶ 7. On this evidence, a reasonable jury could find that Dr. Jacobs's conduct was "severe or pervasive" enough to create a hostile work environment.

Additionally, Defendant argues that Dr. Abdurahman's "admission" that "Defendant Jacobs'[s] harassing conduct was within the scope of her employment" means that there is no *respondeat superior* liability, and summary judgment is therefore appropriate on Plaintiff's hostile work environment claim.  ECF No. 142 at 2 (citing ECF No. 135-2 at 22-26).  But Defendant Jacobs need not act in the scope of her employment in order for Crozer to be found liable.  Rather, liability for co-worker harassment attaches to an employer "if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). There is evidence in the record sufficient to support that claim, such as, for example, Ms. Bilotta's (the then-Vice President of Human Resources of Crozer) testimony that Crozer and its outside investigator knew about, but did not investigate, Dr. Abdurahman's allegations of sexual harassment against Dr. Jacobs.  ECF No. 139-4 (Bilotta Dep.) at 115:12-120:08.

**B.    Race and National Origin Discrimination Claims (Title VII, Section 1981, and PHRA)**

Defendant argues that Plaintiff's race discrimination claims fail because Dr. Abdurahman cannot establish (1) an "inference of discrimination" or that (2) Crozer's reason for terminating her was pretextual.  The Court finds that the record establishes material disputes of fact on both, although it will grant summary judgment on two of Plaintiff's race discrimination "theories" as further described below.

**1.    Inference of Discrimination**

Defendant argues that Plaintiff's race discrimination claims rest upon three theories, none of which give rise to an inference of discrimination.  The Court will grant summary judgment as to the first two, but not the third.

First, Plaintiff argues that the circumstances surrounding Dr. Abdurahman's drug testing give rise to an inference of discrimination. More specifically, Plaintiff argues that after Dr. Jacobs reported that Dr. Abdurahman and other residents were smoking pot, Crozer singled Dr. Abdurahman out and subjected her to drug testing, but did not investigate any of the other residents. *See* ECF No. 139 at 13. However, there is no evidence in the record of the race or ethnic origin of the other residents. Without knowing that information, there can be no inference of racial discrimination.

Second, Plaintiff argues that a reasonable jury could infer racial discrimination from Crozer's decision to place another doctor, who is White, on a leave of absence after he was found intoxicated while on duty, even though Plaintiff was fired for her alleged misconduct. *See id.* at 14. However, "[t]o make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that he and the employee are similarly situated in all relevant respects." *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009). Here, Dr. Doe's misconduct is not "similar" to Dr. Abdurahman's misconduct; indeed, it is undisputed that he was never accused of sexual assault. *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) ("A determination of whether employees are similarly situated takes into account [multiple] factors[, including] the . . . nature of the misconduct engaged in."). Therefore, Dr. Doe is not a proper comparator and there can be no inference of racial discrimination on this theory.

Finally, Plaintiff argues that Crozer's decision to investigate Dr. Jacobs's allegations against Dr. Abdurahman, but not Dr. Abdurahman's competing allegations against Dr. Jacobs, gives rise to an inference of racial discrimination. *See* ECF No. 139 at 13. The alleged fact that Crozer investigated Dr. Jacobs's complaint without giving full consideration to the plaintiff's

allegations is a material fact for the jury.  *See* ECF No. 143 ¶ 62 (stating that the "purported facts about the investigation are not material," but not denying that Crozer failed to investigate Dr. Abdurahman's allegations), ECF No. 142 at 6 (arguing that Plaintiff's race discrimination claims fail because it was reasonable to not investigate them given that they were made "only *after* Dr. Abdurahman was actively being investigated").  A reasonable jury could find the fact that Crozer only investigated Dr. Jacobs's claims, but ignored Dr. Abdurahman's—even when both are based upon competing narratives of the events of September 18, 2018, and even when both are accusing each other of sexual misconduct—gives rise to an inference of discrimination.

### 2.      Pretext and Cat's Paw Liability

"[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; **or** (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (emphasis added) (citations omitted). Therefore, if the plaintiff proceeds under the first prong and points to sufficient evidence that "discredit[s] the defendant's proffered reasons, . . . the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case" to survive summary judgment.  *Id.*  However, the plaintiff must offer sufficient "evidence rebutting the employer's proffered legitimate reasons [that would] allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action."  *Id.* (emphasis in original).

Here, Defendant's proffered reason for firing Dr. Abdurahman is that an independent investigator found that it was more likely than not that Dr. Abdurahman sexually assaulted Dr. Jacobs and engaged in inappropriate sexual conduct with other residents.  ECF No. 135 at 15.  In response, Plaintiff offers sufficient evidence to discredit both the investigation and its factual underpinnings.  For example, Plaintiff submits an expert report by Michael J. Torchia, Esq., in which he opines that Crozer's investigation deviated from accepted industry standards and was flawed.  *See* ECF No. 139-13 at 4, 32 (opining that the investigation was flawed because, among other reasons, the investigator failed to conduct a thorough investigation, including because she failed to investigate any of Dr. Abdurahman's claims and instead blithely called them "a complete defense mechanism," or interview corroborating witnesses, including a percipient witness). Indeed, "[t]he facial accuracy and reliability of the report is probative of whether [Crozer] acted in good faith reliance upon the report's conclusions: the less reliable the report may appear, the greater the likelihood that [Crozer's] reliance on it to justify [its] actions was pretextual."  *See Kowalski v. L & F Prods.*, 82 F.3d 1283, 1290 (3d Cir. 1996) (vacating district court order granting summary judgment in favor of employer in part because there were "very serious questions" as to the reliability of an investigative report that the employer relied upon to show a legitimate reason for terminating the plaintiff).  Additionally, there is evidence that Crozer knew about, but did not investigate, Plaintiff's allegations against Dr. Jacobs and instead only investigated Dr. Jacobs's competing allegations—even though Plaintiff's allegations, if proven true, would have undercut the investigation's findings.  ECF No. 139-4 (Bilotta Dep.) at 115:12-120:08.  On this evidence, a reasonable jury could find that Crozer's proffered reason for the termination of Plaintiff's employment—namely, the investigation and factual underpinnings thereto, if proven and accepted by the jury—did not actually motivate Plaintiff's termination.

There is also sufficient evidence for Plaintiff's theory of cat's paw liability to withstand summary judgment. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 413, 422 (2011) (explaining that under the "cat's paw" theory, an employer may be liable for discrimination when a non-biased decisionmaker is influenced by a biased managerial employee); *McKenna v. City of Phila.*, 649 F.3d 171, 178 (3d Cir. 2011) (to establish liability under a "cat's paw" theory, a plaintiff must establish that the biased manager performed an act motivated by "discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision" (citation omitted)). For example, Ms. Scidurlo, the investigator, testified that she wrote down "Black" next to Plaintiff's name, even though Plaintiff's race was immaterial to the investigation. ECF No. 139-14 (Scidurlo Dep.) at 97:20-99:21. And there is evidence that Dr. Jacobs repeatedly mentioned Dr. Abdurahman's race and ethnic origin in text messages to her colleagues, including one text message in which Dr. Jacobs laughed at one of her colleague's comments: that Dr. Abdurahman should be deported "back to Somalia or wherever she is from." ECF No. 139-16 at 14. Viewed in the light most favorable to Plaintiff, a reasonable jury could find that Dr. Jacobs was racially biased, and the investigator, if not racially biased, was influenced by Dr. Jacobs's animus, which caused Crozer to unjustly terminate Plaintiff.

## C.    Economic Damages

On Plaintiff's claim for economic damages, the Court agrees with Plaintiff that there is a genuine dispute of material fact as to whether Dr. Abdurahman's economic losses were caused by Defendant Crozer. A reasonable jury could find, for example, that Crozer firing her from her residency program "played a substantial part in" causing Dr. Abdurahman to be unable to find another medical position, which was a "reasonably probable consequence." *See* Third Circuit Model Civil Jury Instruction § 5.4.1 (2018 Edition) ("[Plaintiff] must show that the injury would

not have occurred without [defendant's] act . . . [Plaintiff] must also show that [defendant's] act . . . played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of [defendant's] act."); *Dougherty v. Sch. Dist. of Phila.*, No. CIV.A. 12-1001, 2015 WL 2365600, at *5 (E.D. Pa. May 18, 2015) (noting that "[d]etermination of damages ordinarily encompasses an analysis of causation").

BY THE COURT:

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**